IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONTINENTAL FIRST FEDERAL, INC. and CONTINENTAL FIRST FEDERAL HOLDING, LLC, doing business as CFF SALES AND LEASING, ) ) ) ) ) | |
| *Plaintiffs,* ) ) | |
| v. ) ) | No. 3:08-0954<br>Judge Nixon<br>Magistrate Judge Bryant |
| WATSON QUALITY FORD, INC., VISION MANUFACTURING, LTD., and TEXTRON FINANCIAL CORPORATION, ) ) ) ) ) | |
| *Defendants.* ) | |

## ORDER

Pending before the Court is Defendant Watson Quality Food, Inc.'s ("Watson") Motion to Dismiss or Stay This Action or, in the Alternative, to Transfer This Action to the Southern District of Mississippi ("Defendant Watson's Motion") (Doc. No. 16) and supporting Memorandum (Doc. No. 17). Also before the Court is Defendant Vision Manufacturing, Ltd.'s (hereinafter "Vision") Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer to the Southern District of Mississippi ("Defendant Vision's Motion") (Doc. No. 19) and supporting Memorandum (Doc. No. 20).

Plaintiffs Continental First Federal, Inc. and Continental First Federal Holdings, LLC, doing business as CFF Sales and Leasing (collectively and hereinafter "CFF") submitted a single Response in Opposition to both Defendant Watson's Motion and Defendant Vision's Motion (Doc. No. 30). After the Court requested additional briefings regarding whether the Southern

-1-

District of Mississippi could have asserted jurisdiction over Defendant Textron Financial Corporation ("Textron") (Doc. No. 51), Watson filed a Memorandum of Law (Doc. No. 57), Vision filed a Supplemental Brief (Doc. No. 60), and CFF filed a Response (Doc. No. 67).

Defendant Watson also filed a Motion to Ascertain Status ("Defendant Watson's Status Motion") (Doc. No. 80) of Defendant Watson's underlying Motion to Dismiss (Doc. No. 16).

For the reasons stated below, both Defendant Watson's Motion and Defendant Vision's Motion are **DENIED**; as a result, Defendant Watson's Status Motion is **GRANTED**.

I.     BACKGROUND

    A.     *Factual Background*[1]

Plaintiff CFF is a Tennessee corporation with its principal place of business in Mt. Juliet, Tennessee. CFF filed suit against Watson, Vision, and Textron in this Court on September 25, 2008. Watson, a Ford dealership, is a business located in Jackson, Mississippi. Vision is a business located in Danielsville, Georgia. Textron is a corporation organized under the laws of Delaware with its principal place of business in Providence, Rhode Island.

The facts alleged in the Complaint stem from an agreement CFF entered into with Watson to purchase several high-capacity vans. In August 2007, Bill Molitor, a representative from Watson, discussed supplying CFF with vans that would contain unique features to attract independent contractors and comply with their requirements. To fulfill its agreement with CFF, Watson arranged for Vision to design and upfit the vans that CFF planned to purchase from Watson. Vision and CFF never entered into a contractual relationship; instead, CFF claims it

---

[1] Facts in this section are taken from Plaintiff CFF's Complaint (Doc. No. 1, Att. 1) unless otherwise noted.

was a third-party beneficiary of the contract between Watson and Vision. Meanwhile, CFF entered into a Credit and Security Agreement with Textron on February 11, 2008, to allow CFF to finance the vans. (See Doc. No. 38, at 12). As security for the funds advanced, CFF granted Textron:

> a security interest in all of their inventory, equipment and fixtures, and all discounts, rebates, credits, incentive payments, returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories and accessions thereto, and all accounts, chattel paper, instruments, documents, general intangibles, letter of credit rights and other supporting obligations arising therefrom, and all judgments, claims, insurance policies and payments owed or made to [CFF] . . .

(Doc. No. 41, at ¶ 4).

Ultimately, a controversy arose among the parties to the suit with regard to payment, delivery, condition, and pricing of the vans.

According to CFF, it agreed to purchase 50 vans from Watson; the purchase price per van would differ depending on the type of engine and the extent of upfitting in each van. CFF was scheduled to receive the vans in January 2008. As part of the agreement to purchase the vans, CFF paid Vision a $100,000 deposit to place the initial order with Leggett & Platt ("L&P") in Atlanta, Georgia. (See also Doc. No. 53 Att. 1). Sometime after Watson and CFF agreed on the price per van, Watson and Vision informed CFF that the vans would cost an additional $495. CFF did not agree to the increased price. Nonetheless, Watson sent invoices to CFF that reflected a $1,000 per van price increase. CFF alleges that the invoices contained other inaccuracies in addition to the price discrepancy. Furthermore, when CFF demanded its deposit back from Vision, Vision allegedly refused to return it in accordance with the agreement. Although Vision returned the deposit in August 2008, CFF incurred interest charges.

Vision sent three (3) vans, without upfitting, to CFF in Tennessee in December 2007.[2] These vans allegedly had a number of defects and, as a result, CFF was unable to show or sell them to potential buyers. CFF alleges that it later discovered that other Vision customers had previously rejected the three (3) vans due to quality concerns. When CFF approached a local company about upfitting the three (3) vans, the company told CFF that the vans could not be upfitted.

Watson and Vision allegedly told CFF that they would deliver the remaining vans in January 2008. In anticipation of receiving the vans, CFF claims that it made improvements to its retail store to show and sell the vehicles. CFF also alleges that it purchased new computer equipment and hired additional staff in January. CFF claims that it was forced to terminate the new staff because Watson and Vision did not deliver the vans as promised. When CFF still had not received the vans by February 2008, upon inquiry, Watson and Vision claimed that L&P, who had not yet completed work on the vans, caused the delay.

On March 26, 2008 Textron advanced $775,000.00 to CFF under the Credit and Security Agreement. (Doc. No. 38, at 3). CFF claims that it did not request the funds because it had not yet received the remaining vans from Watson and Vision. Nevertheless, Textron advanced an additional $643,000.00 to CFF on April 1, 2008. Shortly thereafter, CFF contacted Textron to protest the advances. Although Textron was aware that CFF had not received the vans, it denies that timely delivery of the vans was a prerequisite to advancing the funds to CFF. (Id.). Furthermore, Textron required CFF to provide insurance coverage for vehicles placed on CFF's

---

[2] In its Complaint, CFF claims Defendants delivered the vans in December 2008, however, given the time line of subsequent related events, the delivery date was clearly December 2007 and CFF's claim to the contrary represents a typographical error. (Doc. No. 1 Att. 1, at ¶ 11).

line of credit regardless of whether CFF had actual possession of the vehicles. (Id.).

In late May 2008, CFF received approximately 10 vans from Watson and Vision. Upon inspection, CFF noted that there were multiple defects as a result of work that Vision authorized L&P to complete. According to CFF, L&P visited CFF's facilities to repair the defects in July 2008, but certain defects remained following the visit. CFF eventually leased some of the vans to customers who complained of additional defects, including improperly sealed doors, inoperable doors and locks, cracked fiberglass, and rust. CFF claims that it notified both Watson and Vision of the defects, but that they failed to correct the problems.

CFF received the last two van deliveries in June 2008 and mid-August 2008. Although CFF originally ordered 50 vans, Watson and Vision delivered a total of 64 vans, 35 of which were placed on CFF's line of credit with Textron. However, as a result of defects, CFF returned 26 vans to Watson on or about September 4th and 5th, 2008. CFF alleges that it received complaints of defects from its customers who leased some of the remaining vans. Moreover, CFF claims that all the remaining vans in its possession have defects and are thus unmarketable.

According to CFF, it made an agreement with Watson for Vision to provide a three-year warranty. The warranty was to cover Vision's craftsmanship and materials installed in the vehicles. However, the warranty CFF received from Vision included an exception for vehicles used commercially. Although Vision has since agreed to provide a warranty covering commercial use, it has yet to provide a written warranty identifying the vehicles covered. CFF further alleges that Vision refused to pay for work that Vision authorized others to perform on the vans; work that CFF must now pay for.

CFF alleges that Watson and Vision's failure to supply vans that conform to CFF's

-5-

agreement with Watson has jeopardized CFF's credit line with Textron. Due to the quality of the vans and warranty issues with Vision and Watson, Textron canceled CFF's line of credit. Textron nevertheless demanded payments from CFF as per the terms of the Credit Agreement. CFF is unable to pay Textron because it is unable to sell the remaining vans due to the vans' alleged defects. CFF claims that Watson and Vision's actions and inactions have threatened CFF's business relationships with non-party contractors and Textron. Furthermore, CFF alleges that it continues to incur costs as a result of Defendants' actions and inactions.

### B. *Procedural History*

Based on the alleged contract between CFF and Watson, CFF alleges seven (7) counts against Watson, including (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranties; (4) violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-104 (2009); (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) negligence. Relying on its alleged status as a third-party beneficiary to the contract between Watson and Vision, CFF alleges seven (7) counts against Vision, including (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranties; (4) violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-104 (2009); (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) negligence. In addition, based on CFF's contractual relationship with Textron, CFF alleges two (2) counts against Textron, including (1) breach of contract and (2) violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-104 (2009). (Doc. No. 1 Att. 1, at ¶s 47-52, 70-78).

In its Answer to the Complaint filed on December 29, 2008, Textron asserted a

Counterclaim against CFF. (Doc. No. 38, at 12-14). Textron claims breach of contract against CFF for CFF's alleged failure to meet its obligations under the Credit and Security Agreement. (Id. at 14).

Prior to CFF filing suit in this Court on September 25, 2008, Watson filed suit against CFF and Vision on July 31, 2008 in the Chancery Court of Hinds County Mississippi for declaratory judgment. (Doc. No. 19 Att. 4). Watson's suit is based on the same factual issues and involves the same parties, with the exception of Textron, as the suit currently before this Court. Watson later filed an Amended Complaint in the Chancery Court on September 25, 2008. (Id. Att. 5). Vision then filed a Notice of Removal from the Chancery Court to the United States District Court for the Southern District of Mississippi on October 1, 2008, pursuant to 28 U.S.C.A. §§ 1332 and 1441. (Doc. No. 19 Att. 5). The Southern District of Mississippi issued an Order on October 16, 2008 granting Watson's motions for preliminary and permanent injunctions. (Doc. No. 18 Ex. 6). In that Order, the District Court instructed Watson to post a bond or cash in the amount of $500,000.00 to allow Watson to take immediate possession of 113 unaltered vehicles in Vision's possession. (Id.). It also instructed Vision to return six (6) additional vehicles to their previously unaltered state in order for Watson to take possession of them as well. (Id.).

In the instant matter, Watson filed a Motion to Dismiss (Doc. No. 16), Memorandum in Support (Doc. No. 17), and the Affidavit of Joseph E. Roberts, Jr. (Doc. No. 18), Watson's lead counsel, on October 28, 2008. Vision also filed a Motion to Dismiss (Doc. No. 19), Memorandum in Support (Doc. No. 20), and the Affidavit of Christopher Solop (Doc. No. 21), Vision's lead counsel, on October 28, 2008. CFF filed its Response (Doc. No. 30) to both

motions on December 12, 2008. CFF's Response included the Affidavit of Thomas A. Meeks, CFF's President and CEO (Doc. No. 30 Ex. A).

On March 3, 2009, the Court issued an Order requesting additional briefings from Watson and Vision regarding whether the Southern District of Mississippi could have exerted jurisdiction over Textron. (Doc. No. 51). Watson filed a Memorandum of Law (Doc. No. 57) on March 16, 2009 and Vision filed a Supplemental Brief (Doc. No. 60). On April 10, 2009, CFF filed a brief in Response (Doc. No. 67). Watson also filed a Motion to Ascertain Status (Doc. No. 80) on June 16, 2009.

## II. DISCUSSION

### A. *Watson's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Defendant Watson asserts that this Court should dismiss this case for lack of subject matter jurisdiction[3] and defer jurisdiction to the Southern District of Mississippi. Relying on Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), Watson provides two (2) arguments for dismissal: (1) the Southern District of Mississippi already assumed jurisdiction over the disputed property in this case when it issued an Order (Doc. No. 18 Ex. 6) on October 16, 2008, granting substantive injunctive relief;[4] and (2): the Court should apply the Colorado River abstention doctrine and decline to assert jurisdiction.

---

[3] In its motion to dismiss (Doc. No 16), Defendant Watson referred to Rule 12(d)(1), however, Rule 12(d) governs matters outside the pleadings of a 12(b) motion and there is no 12(d)(1) in the Federal Rules. Presumably, Defendant meant to reference Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction.

[4] "[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." Colorado River, 424 U.S. at 818.

Colorado River suggests that a *state* court assuming jurisdiction over property may exclude other courts, specifically *federal district* courts, from exercising jurisdiction. However, "between federal district courts . . . no precise rule has evolved . . . [in light of] . . . the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817 (1976) (internal citations omitted). Similarly, Colorado River's abstention doctrine was designed to prevent duplicative litigation between state and federal courts. Id. Thus, the doctrine allows federal courts to dismiss an action that mirrors a concurrent state action. Id.

There is no parallel state action in the instant case. There is a concurrent federal action. Although Watson initially filed suit against CFF and Vision in state court on July 31, 2008 (Doc. No. 19 Att. 4), Vision filed a Notice of Removal to the United States District Court in the Southern District of Mississippi on October 1, 2008. (Id. Att. 5). Therefore, by the time Defendants Watson and Vision filed the pending Motions to Dismiss the action in this Court on October 28, 2008 (Doc. Nos. 16, 19), the Southern District of Mississippi had already asserted jurisdiction over the related case. Colorado River is therefore inapplicable to the present case, and both of Defendant Waton's arguments under that precedent are without merit.

This action is properly before this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff CFF is a Tennessee corporation with its principal place of business in Tennessee, Defendant Watson is a Mississippi corporation with its principal place of business in Mississippi, Defendant Vision is a Georgia corporation with its principal place of business in Georgia, and Defendant Textron was incorporated under the laws of Delaware and with its principal place of business in Rhode Island. (Doc. No. 1 Att. 1, at ¶s 1-4). In addition, CFF

asserts that 50 vans are in dispute, valued at more than $40,000.00 each. (Id. at ¶ 8). Given that all parties are diverse and the amount in controversy exceeds $75,000.00, jurisdiction is proper. Watson's Motion to Dismiss for Lack of Subject Matter Jurisdiction is thus **DENIED**.

B.  *Vison's Motion to Dismiss for Lack of Personal Jurisdiction*

The law of the forum state governs whether personal jurisdiction exists in a diversity action. Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994). In addition, a court's exercise of jurisdiction over a nonresident defendant is valid only if it complies with both the forum state's long-arm statute and constitutional due process requirements. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000). The defendant's due process requirements are satisfied when the defendant has sufficient minimum contacts with the forum state, such that "'traditional notions of fair play and substantial justice' are not offended." Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001) (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). Tennessee's long-arm statute, in relevant part, provides:

> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
>
> (2) Any tortious act or omission within the state;
>
> (3) The ownership or possession of any interest in property located within this state;
>
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

>    (5) Entering into a contract for services to be rendered or for
>    materials to be furnished in this state;

TENN. CODE. ANN. § 20-2-214(a) (2009).

So long as the plaintiff makes a prima facie case for jurisdiction under the appropriate standards and the defendant's due process rights are met, the court may exercise personal jurisdiction over the defendant. Id.; see also Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980) ("[when] the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of jurisdiction").

Vision asserts that the Court lacks personal jurisdiction because Vision does not fall under Tennessee's long-arm statute and did not establish sufficient minimum contacts with Tennessee. The Court disagrees on both counts.

Although CFF did not contract directly with Vision (Doc. 20, at 5), CFF has alleged facts that bring Vision within the scope of Tennessee's long-arm statute. According to CFF, Vision designed and upfitted vans intended for CFF as per a contract between Watson and Vision. (Doc. No. 1 Att. 1, at ¶ 37). Vision then delivered these vehicles to CFF's facilities in Mt. Juliet, Tennessee in December 2007 and May 2008. (Doc. No. 1 Att.1, at ¶s 11, 17; see also Doc. No. 30 Ex. A, at ¶s 2-3). In addition, CFF alleges that Vision representatives visited CFF's facilities in Tennessee in an attempt to remedy the vans' alleged defects. (Doc. No. 30, Ex. A ¶ 5). The fact that Vision's relationship with CFF existed through a contract with Watson does not negate the purposefulness of Vision's actions with CFF in Tennessee. See Chase Cavett Services, Inc. v. Brandon Apparel Group, Inc., 1998 W.L. 846708, at *6 (Tenn. Ct. App. Dec. 7, 1998) (finding that "defendant . . . purposefully availed itself to the privilege of acting and causing consequences in Tennessee."). (Doc. 30 Ex. A, at ¶7-8). Therefore, such contacts constitute the

"transaction of . . . business within th[e] state." TENN. CODE. ANN. § 20-2-214(a)(1) (2009).

Vision also falls under the "tortious act" provision of Tennessee's long-arm statute. According to the statute, a tortious act may be committed outside the state, but so long as the resulting injury is sustained within the state, jurisdiction lies within Tennessee. TENN. CODE. ANN. § 20-2-214(a)(1) (2009); see also Neal, 270 F.3d at 331. In this instance, CFF alleges that Vision contracted with Watson to upfit and design vans intended for CFF. (Doc. No. 1 Att. 1, at ¶ 37). Vision then delivered the vehicles to CFF in Tennessee where CFF discovered multiple defects. (Doc. No. 30 Ex. A, at ¶s 5, 8). The defects included holes in the headliners, cut seat belt covers, scratched shelving, improperly sealed doors, inoperable doors and door locks, cracked fiberglass, and rust. (Doc. No. 30, at ¶s 17, 19). CFF asserts that Vision authorized the work that resulted in these defects. Id. at 17. Given that the defective vans are at issue in this litigation and the defects were discovered in Tennessee, Vision's actions that caused the alleged defects constitute tortious acts.

Furthermore, the due process requirements of Tennessee's long-arm statute are "met if the defendant 'purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'" Neal, 270 F.3d at 331 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In the instant case, Vision delivered the vans to CFF in Tennessee. (Doc. No. 1 Att.1, at ¶s 11, 17; see also Doc. No. 30 Ex. A, at ¶s 2-3). Additionally, CFF alleges that Vision's representatives visited CFF's Tennessee facilities to discuss the defects in these vans. (Doc. No. 30 Ex. A, at ¶ 5). Such actions are consistent with a defendant who "could 'reasonably anticipate being haled into court' in Tennessee." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297

(1980)).

Therefore, CFF has plead facts which allow this Court to exercise personal jurisdiction over Vision. Accordingly, Vision's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

### C. *Transfer Venue*

As an alternative to its Motion to Dismiss for Lack of Subject Matter Jurisdiction or request to stay this action, Defendant Watson requests the Court to transfer this action to the Southern District of Mississippi pursuant to 28 U.S.C. § 1404. (Doc. No. 16, at 1). Similarly, as an alternative to its Motion to Dismiss for Lack of Personal Jurisdiction, Defendant Vision requests the Court transfer this action to the Southern District of Mississippi. (Doc. No. 19, at 1). The Court addresses the merits of both Defendants' arguments below.

#### 1. Legal Standard

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). Courts interpret the statute as dictating a two-step analysis, in which a court must (1) determine whether the suggested venue is one where the action might properly have been brought in the first instance; and if so, then (2) determine which forum is preferable after considering a number of factors. See Van Dusen v. Barrack, 376 U.S. 612, 616-17 (1964); Winnett v. Caterpillar Inc., 2006 WL 1722434, at *2 (M.D. Tenn. June 20, 2006).

The first step of the analysis requires the transferor court to determine whether the action

-13-

could "have been brought" by the plaintiff in the transferee court. Hoffman v. Blaski, 363 U.S. 335, 343-344 (1960). After the first step is met, the second step of the analysis requires the district court to balance both the private and public interest. Smith v. Kyphon, Inc., 578 F.Supp. 2d 954, 962 (M.D. Tenn. 2008). The private interest factors include:

> (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; [and] (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively.

Id. (internal citations omitted); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). The public interest factors are:

> (1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable . . . law.

Smith v. Kyphon, Inc., 578 F.Supp. 2d at 962; see also Gulf Oil, 330 U.S. at 508.

    2.    Analysis

        a.    **The Instant Action Could Not "Have Been Brought" in the Southern District of Mississippi**

The threshold requirement for a district court to transfer a case under § 1404(a) is that the plaintiff must have been able to originally bring the action in the transferee district. Hoffman, 363 U.S. at 343-44. As stated previously, under 28 U.S.C. § 1332, federal district courts have subject matter jurisdiction in civil actions where the amount in controversy exceeds $75,000.00 and is between citizens of different states. 28 U.S.C. § 1332 (2009). Section 1332(c)(1) further

-14-

provides that, for purposes of diversity jurisdiction, corporations are deemed to be citizens of the states where they are incorporated and have their principal place of business. 28 U.S.C. § 1332(c)(1) (2009). In the instant case, all parties are diverse and the amount in controversy exceeds $ 75,000.00. See infra p. 9-10.

The Court must next determine whether the District Court in Mississippi could have exerted personal jurisdiction over the parties. Defendant Watson is a resident of the Southern District of Mississippi. Both CFF and Vision fall within Mississippi's long-arm statute. The statute, in relevant part, states:

> [a]ny nonresident person . . . or corporation . . . who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business . . . or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57 (2009). Vision contracted directly with Watson, a resident of Mississippi. (Doc. No. 1 Att. 1, at ¶ 37); see also (Doc. No. 20, at 6). Moreover, in its Motion, Vision states that it consented to jurisdiction in the Southern District of Mississippi. (Doc. No. 20, at 6). In the Complaint, CFF stated that it contracted directly with Watson. (Doc. No. 1 Att.1, at ¶ 8). Given CFF and Vision's direct contractual relationships with Watson, a Mississippi resident, both parties fall within Mississippi's long-arm statute and the Southern District of Mississippi could assert specific jurisdiction over both parties.

The District Court in Mississippi, however, could not assert personal jurisdiction over Textron. Watson and Vision contend that Textron is a "resident" of Mississippi under Mississippi's long-arm statute because Textron is licensed to do business in Mississippi and has

appointed an agent in the state to accept service of process. (Doc. No. 57, at 3; Doc. No. 60, at 3). In support of this contention, Watson and Vision rely on Poole v. Miss. Publishers Corp., 44 So. 2d 467, 473 (Miss. 1950) and C. H Leavell & Co. v. J. V. Doster, 211 So. 2d 813, 814 (Miss. 1968), respectively. In those cases, the Mississippi Supreme Court determined that nonresident defendants who are licensed to conduct business in Mississippi are "residents" for the purposes of utilizing the long-arm statute and thus exerted personal jurisdiction over the nonresident defendants. C. H. Leavell, 211 So. 2d at 814-15; Poole, 44 So. 2d at 476.

Neither of these cases shed light on the instant case. A distinguishing factor in C.H. Leavell is that the contract at issue was performed entirely in Mississippi. 211 So. 2d at 814. Conversely, the contract between Textron and CFF was performed in Tennessee. At issue in Poole was whether the Chancery Court properly granted equitable relief when it barred a nonresident defendant from bringing suit against a resident plaintiff in the defendant's forum state. 44 So. 2d at 468. In that case, plaintiff filed suit in Mississippi as a result of defendant's alleged libel, which occurred in Mississippi. Id., at 469. In Poole, the Mississippi Supreme Court held that the lower court's injunction was proper. However, the court never reached the question of whether Mississippi's long-arm statute could extend to a nonresident defendant who entered into a contract and performed that contract in a foreign state.

The issue before this Court is whether having a license to conduct business in Mississippi, in addition to appointing an agent to accept service, constitute sufficient contacts for the Mississippi long-arm statute to apply to a nonresident who entered into a contract and performed that contract in a foreign state. In order for the long-arm statute to reach Textron, Textron would have to contract with a resident of Mississippi and that contract would have to be

-16-

Case 3:08-cv-00954   Document 82   Filed 07/09/09   Page 16 of 18 PageID #: 593

performed in whole or in part in Mississippi. MISS. CODE ANN. § 13-3-57. Textron contracted with CFF, a Tennessee corporation. In addition, the contract was performed in Tennessee. Even if CFF qualified as a "resident" of Mississippi under the long-arm statute due to the fact that CFF is licensed to do business in Mississippi, the statute still does not reach Textron because no part of the contract was performed in Mississippi.

Watson and Vision do not allege any additional evidence of Textron's contacts with Mississippi other than the certification from the State of Mississippi of Textron's authority to do business in the state and the presence of Textron's registered agent appointed to accept service of process in Mississippi. However, registering to do business and appointing an in-state agent for service of process do not alone establish general personal jurisdiction over a nonresident:

> [i]ndeed, the Fifth Circuit has specifically rejected the notion that merely registering to do business and appointing an in-state agent for service of process automatically confer general personal jurisdiction over a nonresident defendant, or act as consent to a court's jurisdiction. See Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 17, 180-84 (1992); see also Ratliff v. Cooper Laboratories, Inc., 444 F2d 745, 748 (4th Cir. 1971) ("[a]pplying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another"; due process requires more than "mere compliance with state domestication statutes"); Lyons v. Swift Transp. Co., Inc., 2001 WL 1153001, *6-7 (E.D.La. [Sept. 26, 2001]) . . . ("regardless of the existence of an agent for service of process, the exercise of personal jurisdiction over a non-resident defendant must nevertheless comport with the principles of due process).

Norfolk S. Ry. Co. v. Burlington N., 2005 WL 1363210, at *2 (S.D. Miss. June 2, 2005). Thus, Textron's license to do business in the State of Mississippi and appointment of an in-state agent for service of process are not sufficient to confer personal jurisdiction over Textron in the District Court of Mississippi.

Given that the District Court in Mississippi could not have exerted personal jurisdiction over Textron, Plaintiffs cannot fulfill the threshold transfer requirement. As such, the Court cannot reach the question of whether the factors in this case meet the second requirement of the two-prong transfer test. Therefore, the Court cannot transfer this case to the District Court in the Southern District of Mississippi.

## IV. CONCLUSION

The Court finds that it has subject matter jurisdiction over the issues in this case and personal jurisdiction over Vision. However, because Defendants were unable to meet the requirements of section 1404(a), the Court cannot transfer this case to the United States District Court in the Southern District of Mississippi. Accordingly, both Defendant Watson's Motion and Defendant Vision's Motion are **DENIED**. Thus, Defendant Watson's Status Motion is **GRANTED**.

It is so ORDERED.

Entered this the ____9____ day of July, 2009.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT